IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THERESA ACUNA, ASHLEY ACUNA, | § § | |
| *Plaintiffs,* | § § § | SA-20-CV-01102-XR |
| vs. | § § § | |
| COVENANT TRANSPORT, INC., CTG LEASING COMPANY, CHARLES JAMES LEACH, | § § § § § | |
| *Defendants.* | § § | |

## ORDER

Before the Court in the above-styled cause of action is Plaintiffs' Memorandum in Support of Motion to Exclude Investigative Reports and Surveillance Footage and Motion for Sanctions [#193], which was referred to the undersigned for disposition on March 22, 2022. The undersigned has authority to issue this non-dispositive order on the motion pursuant to 28 U.S.C. § 636(b)(1)(A).

The undersigned held a hearing on the motion on April 26, 2022, at which counsel for Plaintiffs and Defendants appeared in person. After considering Plaintiffs' motion, Defendants' response [#220], the governing law, and the arguments of counsel at the hearing, the Court will **deny** the motion.

### I.  Background

This is a personal-injury action arising out of a motor vehicle accident between a vehicle operated by Plaintiff Theresa Acuna, in which Plaintiff Ashley Acuna was a passenger, and a tractor-trailer operated by Defendant Charles Leach that was allegedly owned or leased by Defendants Covenant Transport, Inc. ("Covenant"), and CTG Leasing Company ("CTG"). Plaintiffs allege they sustained serious injuries from the accident due to the negligence of

Defendants. Both Plaintiffs have undergone spinal surgeries, which they claim were necessary treatment for their injuries. The live pleading, Plaintiffs' Second Amended Complaint [#27], asserts causes of action for negligence against Leach and negligence based on a theory of *respondeat superior* liability against Covenant and CTG. The District Court previously dismissed all claims against Covenant and CTG based on their direct negligence in entrusting, hiring, training, and supervising Leach, among other theories.

The motion before the Court concerns certain surveillance video and investigative reports produced by the private investigation firm, Ethos Risk Services, that Defendants produced to Plaintiffs with their Second Supplemental Disclosures. The reports are dated August 9, 2021, and September 22, 2021, and concern unmanned surveillance of Plaintiffs' residence from July 29, 2021, to August 3, 2021, and September 17, 2021, to September 19, 2021, respectively. (Surveillance Investigative Reports [#193-1], at 1–21.) The reports summarize video footage of Plaintiffs outside of their home during these time periods and note that during the surveillance, Plaintiffs were observed carrying shopping bags, beach chairs, strollers, and children, and that neither Plaintiff was observed using any medical or orthopedic devices of any kind during the surveillance period. (*Id.* at 3–12.) Defendants intend to offer these reports and the accompanying video surveillance into evidence at trial to contradict Plaintiffs' testimony as to the extent and severity of their personal injuries allegedly stemming from the accident in this case.

Plaintiffs move to exclude the reports, surveillance footage, and testimony of Ethos investigators and issue sanctions on the basis that Defendants' counsel violated the ABA Model Rules of Professional Conduct in obtaining the surveillance; the information and footage were obtained by fraud, deception, and false information; and several hours of surveillance footage

was deleted, concealing relevant evidence from Plaintiffs and amounting to a spoliation violation.

In making these arguments, Plaintiffs rely on the deposition testimony of Melonie Simpson, Operations Manager for Ethos, and the affidavit of Plaintiff Theresa Acuna ("Theresa"). Plaintiffs took the deposition of Ms. Simpson on January 19, 2022, regarding Defendants' hiring of Ethos to conduct private unmanned surveillance of the front yard of Plaintiffs' residence. Ms. Simpson testified that on July 29, 2021, an Ethos employee and licensed private investigator in the State of Texas, Tucker Macy, installed a traffic monitoring device camera across the street from Plaintiffs' residence on the public easement or right-of-way of the property to record activities occurring in public outside of the home of Plaintiffs. (Simpson Dep. [#193-2], at 8:15–9:7, 13:17–19.)

According to Simpson, the installed camera recorded activities of Plaintiffs' residence around the clock for 24 hours every day and was motion-sensitive, meaning the camera would zoom in on any activity within the camera's view. (*Id.* at 17:17–18, 21:16–23.) Ethos's video editor in this case, Josh Miller, would download the video each day and review the clips and write a summary report, while deleting those parts of the video that were deemed to be not related to Plaintiffs or irrelevant to this case. (*Id.* at 17:4–18:21.) Ms. Simpson testified that any video footage that was not of a person, e.g., video of a car, cat, or squirrel, was not retained and was not sent to Defendants' counsel per Ethos policy. (*Id.* at 56:14–21, 59:6–12.) According to Ms. Simpson, however, all video footage that showed any persons captured in front of Plaintiffs' home was provided to counsel. (*Id.* at 55:25–56:4.) Plaintiffs believe that the deletion of video footage from the surveillance recordings constitutes improper spoliation of relevant evidence and

necessitates the imposition of sanctions, including the exclusion of the surveillance recordings and reports and an adverse inference instruction to the jury regarding the spoliation.

During her testimony, Ms. Simpson also explained that in surveilling Plaintiffs' residence, Ethos represented to neighbors that it was conducting traffic surveillance of the neighborhood when in fact Ethos was surveilling Plaintiffs' activities outside of their home. (*Id.* at 10:20–11:4.) She further testified that Mr. Macy placed door hangers on residences in the area regarding the traffic monitoring device camera. (*Id.* at 11:5–12:8.) Plaintiffs submitted a photograph of the door hanger with their motion, which demonstrates that the door hanger represents that it was provided by a company by the name of Magne-Tek and that the company was responsible for conducting "Traffic Data Analysis," "Telemetry Services," and "Data Back-Up." (Door Hanger [#193-5], at 1–2.) Ms. Simpson testified that none of these services was performed in Plaintiffs' neighborhood and that the website provided on the door hanger is not a working website. (Simpson Dep. [#193-2], at 11:5–12:8.) Plaintiffs believe these representations constitute fraudulent misrepresentations, which necessitate the exclusion of the surveillance video and reports.

Theresa's affidavit states that in July 2021, on the day the camera was installed in her neighborhood, an unidentified man walked onto her property and knocked on her front door while standing by a large window, wide enough for him to see inside her home. (Theresa Aff. [#193-3], at ¶ 2.) According to Theresa, when she answered the door, the man handed her a door-hanger and relayed that he was in the neighborhood to install a traffic counter to survey traffic to evaluate the installation of a new streetlight. (*Id.* at ¶ 2–3.) Theresa further states that because the man referenced a streetlight, she believed he was with the government. (*Id.* at ¶ 5.) Ms. Simpson testified in her deposition that Mr. Macy did not visit with Plaintiffs before

installing the surveillance camera.  (Simpson Dep. [#193-2], at 45:24–46:2.)  Plaintiffs believe that Mr. Macy's communications with Theresa constitute prohibited communications with persons represented by counsel necessitating the exclusion of the surveillance video and reports.

## II.  Analysis

Again, Plaintiffs make three arguments in advocating for the exclusion of the surveillance video and reports and any accompanying testimony at trial: (1) Defendants' counsel violated the ABA Model Rules of Professional Conduct in obtaining the surveillance; (2) the information and footage were obtained by fraud, deception, and false information; and (3) several hours of surveillance footage was deleted, concealing relevant evidence from Plaintiffs and amounting to a spoliation violation.  None of these arguments has merit, and the Court finds that exclusion of the evidence is not warranted.

**A.  Defendants' counsel did not violate the Texas Disciplinary Rules of Professional Conduct.**

Plaintiffs contend that Mr. Macy's communications with Theresa at her front door on the day of the installation of the surveillance camera constitute prohibited communications with persons represented by counsel in violation of Rule 4.2 of the American Bar Associations' Model Rules of Professional Conduct.  The Court disagrees.

First, Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct governs the alleged improper communications, not the ABA Model Rule.  This Court's Local Rules authorizes the consultation of the ABA Model Rules of Professional Conduct only "[f]or matters not covered by" the Texas Rules.  W.D. Tex. Loc. R. AT-7(a).  Rule 4.02 covers the same matters as ABA Rule 4.02, as both prohibit communications between an attorney with a party the attorney knows to be represented by another attorney.

Rule 4.02 provides:

5

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Tex. Disciplinary R. Prof'l Conduct 4.02(a).  Because Rule 4.02 prohibits a lawyer from communicating "about the subject of the representation" with a person represented by another lawyer "regarding that subject," it is considered a broader prohibition than Model Rule 4.2, which prohibits a lawyer from communicating "about the subject of the representation" with a person represented by another lawyer "in the matter."  *See Camoco, LLC v. Leyva*, 333 F.R.D. 603, 609 (W.D. Tex. 2019) (comparing both rules).  In other words, Rule 4.02 covers communications between a lawyer and a represented person about subjects that "may touch on *any legal matter* for which the latter is represented" versus "*the specific legal matter* on which the communications are based upon."  *Id.* (emphasis in original).

Even applying this broader prohibition on communications, Plaintiffs have failed to demonstrate that Defendants' counsel violated the rule.  Theresa's affidavit states that Mr. Macy relayed that he was in the neighborhood to install a traffic counter to survey traffic in the neighborhood for the possible installation of a new streetlight.  (Theresa Aff. [#193-3], at ¶ 2.)  Theresa does not make any assertions in her affidavit that Mr. Macy discussed the subject of any legal matter with Theresa or anyone in her family.  Nor have Plaintiffs provided the Court with any other evidence to that effect.  Rule 4.02 does not prohibit all communications of any kind, only those concerning a subject for which Theresa is represented by counsel.

Moreover, there is also no evidence that any communication between Mr. Macy and Theresa on July 29, 2021, (if improper) should be imputed to Defendants' counsel.  By its terms, Rule 4.02 does not prohibit all communications with a represented person, "as long as the lawyer

6

does not cause or encourage the communication without the consent of the lawyer for the other party." *Camoco*, 333 F.R.D. at 608.  There is no evidence before the Court that Defendants' counsel caused or encouraged any contact between Mr. Macy and Theresa.  Defendants retained Ethos to investigate Plaintiffs, but Ms. Simpson testified in her deposition that she herself never spoke with Defendants' counsel or anyone in their law firm prior to the placement of the camera or before the commencement of surveillance of the front of Plaintiffs' residence.  (Simpson Dep. [#193-2], at 38:16–39:19.)  According to Ms. Simpson, at least five months intervened between the surveillance and when she first had contact with Defendants' counsel.  (*Id.*)  Plaintiffs did not take the deposition of Mr. Macy, and there is no testimony from any witness that Defendants' counsel directed Mr. Macy to approach the front door and speak with Theresa on the day of the installation.  Accordingly, Defendants' counsel did not violate Rule 4.02, and this is not a basis for the exclusion of the surveillance evidence.

**B.     Ethos's undercover representations are not a basis for excluding the surveillance evidence.**

Plaintiffs next argue that Ethos and its investigators obtained the surveillance by fraud, deception, and false information, requiring the exclusion of the videos, reports, and any accompanying testimony.  Relatedly, Plaintiffs accuse Mr. Macy of fraudulently representing to Theresa that he was a government employee, and they argue this fraudulent representation also requires exclusion of the video footage.  The Court disagrees.

Plaintiffs cite several sections of the Texas Occupation Code in support of these arguments: Sections 1702.130, 1702.131, and 1702.361.  These sections of the Texas Occupation Code govern private investigation.  Section 1702.130 prohibits an investigator from "us[ing] a title, an insignia, or an identification card, wear[ing] a uniform, or mak[ing] a statement with intent to give an impression that the person is connected with the federal government, a state

7

government, or a political subdivision of a state government." Tex. Occ. Code § 1702.130(a)(1). Section 1702.131 addresses advertising and states that "[a]n advertisement by a company license holder soliciting or advertising business must contain the company license holder's company name and address as stated in department records." *Id.* at § 1702.131. Finally, Section 1702.361 prohibits licensed investigations companies or their agents from engaging in "fraud, deceit, or misrepresentation" and provides that such acts can be grounds for revocation of licensure by the Texas Public Safety Commission. *Id.* at § 1702.361(b)(1)(C).

Plaintiffs have not convinced the Court that any of these provisions were violated in the context of Ethos's investigation of Plaintiffs' activities outside of their residence. Although Theresa states in her affidavit that she believed Mr. Macy to be a government employee, the objective evidence, namely the door hanger provided to Theresa, undercuts the credibility of this assertion. There is no testimony that Mr. Macy used any title or uniform suggesting he worked for the government, and Plaintiffs conceded at the Court's hearing that Mr. Macy did not make any actual representations, verbal or physical, that he was a governmental employee when he encountered Theresa. Additionally, the door hanger given to Theresa does not reference any governmental entity so as to violate Rule 170.130. Rather, it lists the name of a fictitious private company. Plaintiffs attempt to argue that the use of the fictitious company on the door hanger is an illegal advertisement for Ethos in violation of Section 1702.131. But Ethos was not soliciting or advertising its private investigative services in giving Theresa a door hanger or leaving one at her residence. Finally, the fraud and deceit referenced in Section 1702.361 cannot possibly prohibit all undercover pretext investigations by private investigation companies.

Moreover, even assuming that Ethos or its agents violated any of the provisions of the Texas Occupation Code cited by Plaintiffs, Plaintiffs have not provided the Court with any

authority suggesting that such violations would require the exclusion of evidence obtained by the investigator committing the violation. Chapter 1702 of the Texas Occupation Code governs private security professionals and addresses the licensure of investigations companies, the issuance of commissions to certain security officers, and the regulation of license holders by the Texas Department of Public Safety. *Id.* at § 1702.004. Presumably there are mechanisms by which individuals can raise complaints about the conduct of private investigation firms with the appropriate licensing entities. But Plaintiffs have not provided the Court with any authority requiring the exclusion of evidence due to a violation of the Texas Occupations Code governing private investigators, and the Court has found none. *See Adobe Sys. Inc. v. SKH Sys., Inc.*, No. A-17-CA-018-SS, 2017 WL 6611513, at *5 (W.D. Tex. Dec. 27, 2017) (noting that defendant offered "no case where a court excluded evidence obtained through a pretext investigation" and rejecting argument that investigator's undercover conduct was grounds for exclusion of evidence). The Court declines to exclude the challenged surveillance evidence based on the alleged violations of the Texas Occupations Code.

**C.     Plaintiffs are not entitled to spoliation sanctions against Defendants.**

Plaintiffs' final basis for exclusion of the surveillance evidence is that the deletion of hours of video from the surveillance recordings and the failure to provide all recordings to Defendants' counsel constitute the spoliation of evidence for which Defendants must be sanctioned. Plaintiffs have not carried their burden to establish spoliation and the entitlement to the sanctions of evidence exclusion and a spoliation instruction.

In cases based on diversity jurisdiction, federal law applies to the issue of spoliation. *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). Rule 37(e) of the Federal Rules of Civil Procedure addresses the spoliation of electronically stored information ("ESI")

and the video footage at issue here. There is no rule specifically addressing the spoliation of tangible evidence, but this Court has "inherent power to regulate the litigation process" where no rule expressly governs. *Rinkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010). Rule 37(e) provides that

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;
>
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The party seeking the spoliation sanction bears the burden of proof. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (internal quotation marks omitted). A party seeking a sanction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense, such that the spoliation resulted in prejudice to the innocent party. *Rinkus Consulting Group*, 688 F. Supp. 2d at 615–16.

Giving an adverse instruction to the jury is considered a severe sanction that should not be imposed unless there is evidence of "bad faith." *Id.* at 614. "Mere negligence is not enough to warrant an instruction on spoliation." *Russell v. Univ. of Tex. of Permian Basin*, 234 Fed. Appx. 195, 208 (5th Cir. 2007) (internal quotation and citation omitted). Although the Fifth Circuit has not directly addressed whether the standard of proof on spoliation issues is a preponderance of the evidence or the higher burden of clear and convincing evidence, courts regularly require clear and convincing evidence of misconduct before holding parties in civil contempt, imposing attorneys' fees under their inherent power, and imposing any punitive remedy. *See In re Sealed Appellant*, 194 F.3d 666, 670–71 (5th Cir. 1999) (clear and convincing evidence of bad faith required when court sanctions attorney under its inherent powers); *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1476–78 (D.C. Cir. 1995) (surveying case law and requiring clear and convincing of litigation misconduct to impose sanction of default judgment).

Plaintiffs have not carried their burden to demonstrate the intentional destruction of relevant evidence by Defendants' counsel (or Ethos as its agent) performed in bad faith. The only sworn testimony before the Court regarding the video footage is the deposition testimony of Ms. Simpson. Ms. Simpson testified that Ethos preserved all video footage depicting any person captured during the surveillance period and only deleted those portions of the 24-hour surveillance depicting cars and animals or no activity. (Simpson Dep. [#193-2], at 56:14–21.) Ms. Simpson further testified that all footage depicting persons—the only footage that could possibly be relevant to Plaintiffs' claims—was provided to Defendants' counsel. (*Id.* at 55:25–56:4.) And Defendants have produced all of that footage to Plaintiffs.

Plaintiffs accuse Ethos of possibly deleting relevant video and claim they have no means of corroborating Ms. Simpson's representations on Ethos's video retention policy and its application in this case. These accusations by Plaintiffs are insufficient to establish under any evidentiary standard that Defendants destroyed relevant evidence. Importantly, Plaintiffs could have deposed Mr. Miller, the Ethos employee responsible for the video editing and deletion in this case, but they did not seek leave to do so.

Again, Plaintiffs bear the burden to establish that Defendants intentionally destroyed evidence relevant to their claims. They have failed to carry this burden, and the Court will not exclude the surveillance evidence at issue or order an adverse instruction to the jury.

### III.  Conclusion and Order

In summary, Plaintiffs have not convinced the Court that they are entitled to the exclusion of the surveillance videos, reports, or any accompanying testimony at trial.

**IT IS THEREFORE ORDERED** that Plaintiffs' Memorandum in Support of Motion to Exclude Investigative Reports and Surveillance Footage and Motion for Sanctions [#193] is **DENIED**.

SIGNED this 6th day of May, 2022.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE